IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BLACK WARRIOR RIVERKEEPER, INC., et al., | } } } | |
| Plaintiffs, | } } | CIVIL ACTION NO. 2:13-CV-2136-WMA |
| v. | } } | |
| U.S. ARMY CORPS OF ENGINEERS, et al., | } } } | |
| Defendants, | } } | |
| THE ALABAMA COAL ASSOCIATION, et al., | } } } | |
| Intervenor-Defendants. | } | |

**MEMORANDUM OPINION**

Plaintiffs in the above-entitled action are asking this court to waive the surety bond required by Rule 65(c), Fed.R.Civ.P., as a prerequisite to the entry of a preliminary injunction.

During its 31 years on the bench, this court has never waived the bond required by Rule 65(c), or reduced it to a nominal amount, and it has never been asked to do so. This, then, is a case of first impression for this court. Because an injunction would cause great economic harm to some of the parties sought to be enjoined, this court now echoes and adopts as its own belief, what the Third Circuit said about the bond requirement of Rule 65(c) in *Zambelli Fire Works Mfg. Co. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010):

> We have never excused a District Court from requiring a bond **where an injunction prevents commercial, money-making activities**.

(emphasis added).

Black Warrior Riverkeeper, Inc., and Defenders of Wildlife (hereinafter "plaintiffs") are organizations made up of people who are committed to the protection of the environment.  They bring this action against U.S. Army Corps of Engineers, Lt. General Thomas P. Bostick, U.S. Army Corps of Engineers, Col. John Chytka, U.S. Army Corps of Engineers, Mobile District (hereinafter "government-defendants"), Alabama Coal Association, MS&R Equipment Co., Inc., Reed Minerals, Inc., Twin Pines, LLC, and Walter Minerals, Inc. (hereinafter "intervenor-defendants").  Plaintiffs attack 41 national permits issued and enforced by government-defendants under which national permits intervenor-defendants are engaged in the surface mining of coal within the watershed of the Black Warrior River.  Intervenor-defendants made themselves defendants without objection.  It is obvious and undisputed that intervenor-defendants are engaged in "commercial money-making activities" and that they would be drastically harmed while an erroneous preliminary injunction, if granted, would be in effect. In fact, they would have to shut down their operations.

Plaintiffs' motion came on to be heard on February 4, 2014. During a lengthy colloquy, the court made known its opinion, arrived at after a consideration of the papers then before the court, that a bond in the amount of $300,000 will be required before the entry of any preliminary injunction.  This condition

must be met even if plaintiffs can prove the other four prerequisites for a preliminary injunction, namely: (1) a substantial likelihood of success on the merits; (2) irreparable injury to plaintiffs unless the injunction is issued; (3) whatever harm plaintiffs may sustain by a denial of the preliminary injunction outweighs the harm the injunction would cause defendants; and (4) the preliminary injunction would not be adverse to the public interest.  The court pointed out to the parties the obvious, namely, that it would be a futile act and a total waste of judicial resources to conduct a two or three day hearing in order to afford plaintiffs the opportunity to try to meet their burden of proving the above four essentials if they cannot meet the other essential, the posting of the bond required by Rule 65(c).  The court in its very first order entered in this case called upon the parties to express themselves on what should be the amount of a preliminary injunction bond.  This constituted fair warning that this court believes that Rule 65(c) means what it says.  In arriving at the sum of $300,000, the court admittedly was acting in the mistaken belief that intervenor-defendants are claiming a prospective monetary loss of approximately $78,000,000. The court, suffering from macular degeneration and shock, put the comma in the wrong place when reading intervenor-defendants' brief, which actually claims prospective damages of $780,000,000, and not $78,000,000.  Intervenor-defendants have now made clear their

position that a bond of $300,000 is pitifully inadequate.  The court did not, and does not, retreat from its finding of $300,000 as an appropriate amount for the Rule 65(c) bond in this case, despite acknowledging that a wrongfully enjoined party is limited to the amount of the bond for the recovery of any damages it sustains.  *See Blumenthal v. Merrill Lynch*, 910 F.2d. 1049, 1055-1056 (2d Cir. 2003).  Put another way, the bond is treated by most courts as a contract by which the amount posted is the consideration or "price" paid for a wrongful injunction.  *See Sprint Commc'ns Co. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 240 (3d Cir. 2003).  Plaintiffs do not want to pay the "price" here even if the "price" proves to be woefully insufficient to cover intervenor-defendants' losses.  Plaintiffs have made it quite clear they could not and would not post a bond of $300,000 or any amount other than a nominal amount.

A bond in the amount of $780,000,000 would, of course, be prohibitive in any case.  Inhibition, if not prohibition, in some cases was undoubtedly one of the purposes of Rule 65(c).  It would more likely violate Rule 65(c) to eliminate the bond entirely (or its equivalent, the setting of a nominal bond) than to require a bond in the millions.  The court cannot imagine that any seeker of a preliminary injunction would be able to post a bond, whether in cash or with a corporate surety, of $780,000,000, the astronomical amount intervenor-defendants claim to be their potential loss.

And, yet, such a figure arguably is within the contemplation of Rule 65(c), and to set it in that amount would not constitute an abuse of discretion if intervenor-defendants can prove prospective damages in that amount.

Before ruling on plaintiffs' request for a preliminary injunction, the court must, of course, satisfy itself that it has jurisdiction. Government-defendants have not challenged the standing of plaintiffs. Intervenor-defendants have seriously challenged plaintiffs' standing. While the said challenge is not entirely devoid of merit, the court has determined and now FINDS that plaintiffs do have standing to present their complaint to this court, including standing to request a preliminary injunction.

The next and, as it turns out, the dispositive issue arises from Rule 65(c) itself, which provides:

> **Security**. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

It should not be necessary to point out that Rule 65(c), like all statutes and rules, is to be given the plain meaning imparted by its clear and unequivocal language. The language of Rule 65(c) is clear and unequivocal. The purpose and meaning of Rule 65(c) is readily discernable from its language. The court can detect no ambiguity. No legislative history is needed to know that the

5

drafters of Rule 65(c) intended to protect the subjects of an ultimately found-to-be erroneous preliminary injunction from the damages they have sustained.  In other words, if a preliminary injunction is issued in error, defendants are entitled to the security against loss afforded by the Rule 65(c) bond.

Although no rules of construction are needed in order to arrive at the proper understanding of Rule 65(c), there is one rule of construction that strongly reenforces what this court has already found to be the clear and unequivocal meaning of the rule. That well recognized rule of construction is: "*Expressio unius est exclusio alterius*".  The last sentence of Rule 65(c) expressly exempts "the United States, its officers and its agencies" from the bond requirement.  This **express** exemption of federal governmental entities proves not only that the drafters of Rule 65(c) knew how to provide for exceptions to their rule, but that they refused to recognize any exceptions beyond those that they expressly enumerated. Hypothetically, if this court had been the drafter, it could have added public-interest plaintiffs and/or impecunious plaintiffs to the entities not required to post a bond, but such additions would have emasculated the rule, and this court is not dealing with what it might believe is good public policy.  It is required to enforce the public policy solidly codified in Rule 65(c) as it is written.

Rule 65(c) calls upon this court to fix a bond amount in what

it considers to be the amount necessary to pay the costs and damages sustained by parties found to be have been wrongfully enjoined. There is not a hint of a suggestion in the language of Rule 65(c) that a bond can be set at a nominal amount or that the bond can be waived entirely in cases like this one where the damages that may be sustained would be enormous, and/or where the plaintiffs are financially incapable of posting a fair and realistic bond, as in this case.

Plaintiffs rely upon *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. Unit-B 1981), which is binding on this court. Unfortunately for plaintiffs, the instant scenario was not dealt with in *City of Atlanta*, where the precursor to the Eleventh Circuit affirmed a trial court's denial of a preliminary injunction after the trial court had first entered a temporary restraining order that was vacated eight days later when the motion for a preliminary injunction was denied upon a finding that there was no likelihood of success on the merits. The trial court had not fixed, and the plaintiff had not posted, a bond under Rule 65(c) during the eight-day period while the TRO was in place. Unit B found no abuse of discretion by the trial court in failing to fix a TRO bond, saying, however:  "We recognize that a district court may abuse its discretion in refusing to require security in a particular case." The instant case is that "particular case" in which a court would abuse its discretion if it refused to require

any security.  In *City of Atlanta*, Unit B found the district court's technical shortcoming innocuous because it had "made it clear that the TRO would be in effect for only eight more days", and "the short duration of the restraining order minimized the risk of serious harm to MARTA."  In the instant case, unlike *City of Atlanta*, it will be impossible to minimize the risk of serious harm to intervenor-defendants if a preliminary injunction is imposed upon them and later set aside.  To deny a bond would not only be abusing this court's discretion.  It would be flagrantly disregarding a binding rule.  Plaintiffs, while arguing that a West Virginia federal court only required a $5,000 bond in a case that may or may not be substantially similar to this one, informs the court that it could not and would not post even a $5,000 bond.  And, a preliminary injunction here would most assuredly last a lot longer than eight days.

While mentioning a very small number of fact situations in which a trial court might get by with not requiring a Rule 65(c) bond, 13-65 MOORE'S FEDERAL PRACTICE §65.52 (Matthew Bender 3d Ed.) conspicuously fails to cite any authority for dispensing with the Rule 65(c) bond when, as here, there is a high risk of monetary loss to a party being preliminarily enjoined.

Without having evaluated the evidence that intervenor-defendants could have offered to prove their monetary losses during the long period of inactivity assuredly forced upon them by a

8

preliminary injunction, such losses are unquestionably very sizeable, making the waiver of or the fixing of a nominal bond a quixotic venture without any redeeming feature.

Plaintiffs cannot successfully argue that the court cannot establish the bond amount unless and until it finds that plaintiffs have proven the four other essentials to their entitlement to preliminary injunctive relief.  This court is not putting the cart before the horse when the cart cannot move without the horse.  As a matter of simple logic, a trial court must have the authority to deny a preliminary injunction when plaintiffs admit that they cannot and will not post a Rule 65(c) bond after an expensive full scale trial.  The existence of such authority is not only a matter of logic and good court management, but that logic is illustrated by *Jones v. Brown*, 518 Fed.Appx. 643 (11th Cir. 2013), in which the Eleventh Circuit recently affirmed the denial of a preliminary injunction.  The trial court's denial was based on the sole fact that plaintiff had not provided the security mandated by Rule 65(c).  In that case, the actual amount of the bond had not been fixed before the preliminary injunction was denied.  Although unpublished, *Jones v. Brown* starts with the Eleventh Circuit's acknowledgment of the proposition that the denial of a preliminary injunction is reviewed for abuse of discretion and not *de novo*.  The Eleventh Circuit then found that the trial court did not abuse its discretion when it denied the preliminary injunction because

plaintiff had not furnished any evidence upon which the court could fix the amount of a bond. In the instant case, plaintiffs, like plaintiff in *Jones v. Brown*, have offered no evidence upon which the court can fix a fair and reasonable bond. This court is not suggesting that they needed to do so. Instead, in the face of intervenor-defendants' affidavits virtually guaranteeing damages in the millions of dollars, they seek to proceed without a bond. In *Jones v. Brown*, the trial court did not make the requisite findings of no irreparable harm, etc., before it denied the preliminary injunction undoubtedly because the bond came first. Instead, it recognized that without a bond there could be no injunction, and therefore placed the absence of the bond as the dispositive fact, just as this court is now doing. No matter whether in a lengthy evidentiary hearing plaintiffs might demonstrate irreparable harm outweighing the harm to defendants, such a hearing would have been a totally futile and frustrating enterprise when plaintiffs thereafter failed to post the Rule 65(c) bond.

In *Black Warrior Riverkeeper, Inc. v. Black Warrior Minerals, Inc.*, 734 F.3d 1297 (11th Cir. 2013), the Eleventh Circuit dealt with another action brought by Black Warrior Riverkeeper, Inc., one of the plaintiffs in the instant case, against another coal extracting company. It was brought under the Clean Water Act. The defendant there was operating, like these intervenor-defendants, under a permit issued under the national permitting system, which,

10

according to the Eleventh Circuit, is the "centerpiece" of the Clean Water Act.  *Id*. at 1299 (*quoting Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1225 (11th Cir. 2009)).  Black Warrior Riverkeeper there needed to be cut some slack with an interpretation of the procedural rules in the Clean Water Act that would open the doors of the court for it to complain about certain alleged environmental damage being caused by Black Warrior Minerals, Inc.  The Eleventh Circuit refused to cut Black Warrior Riverkeeper any slack.

    To enjoin intervenor-defendants without a meaningful bond would not be cutting plaintiffs a little slack.  Rather, it would make the drafters of Rule 65(c) "slack jawed".

    A separate order denying the preliminary injunction will be entered.

    DONE this 18th day of February, 2014.

                                                     _____
                                                   WILLIAM M. ACKER, JR.
                                                   UNITED STATES DISTRICT JUDGE